UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL J. SOGN,<br><br>      Plaintiff,<br><br>  v.<br><br>ALASKA USA FEDERAL CREDIT UNION, et al.,<br><br>      Defendants. | CASE NO. C17-432 MJP<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Defendant Alaska USA Federal Credit Union's Motion for Summary Judgment (Dkt. No. 22),

2. Defendant Car Service, LLC's Joinder and Motion for Summary Judgment (Dkt. No. 25),

3. Plaintiff's Response to Motions for Summary Judgment (Dkt. No. 37) and Motion for Judicial Notice (Dkt. No. 31),

4. Defendants' Reply in Support of Motions for Summary Judgment (Dkt. No. 38),

all attached declarations and exhibits, along with relevant portions of the record, rules as follows:

IT IS ORDERED that Defendant Alaska USA Federal Credit Union's motion for summary judgment is PARTIALLY GRANTED (as to Plaintiff's claim for emotional damages under the Washington Consumer Protection Act and RCW 62A.9A-609) and PARTIALLY DENIED (as to the remainder of the motion).

IT IS FURTHER ORDERED that Defendant Car Service, LLC's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for judicial notice is GRANTED (however, the evidence regarding the criminal history of Jeremie Kaufman will not be admitted).

IT IS FURTHER ORDERED that Plaintiff's motion to strike evidence is PARTIALLY GRANTED (as to the declaration of witness Nazir and the audio recording of the Sogn-Varhas telephone conversation) and PARTIALLY DENIED.

IT IS FURTHER ORDERED that Defendant's motion to strike evidence is GRANTED.

**Background**

Defendant Alaska USA Federal Credit Union ("AUSA") was the holder of a note on Plaintiff's Lexus. Plaintiff fell behind in his payments and AUSA hired PAR, Inc., who in turn hired Car Service, LLC ("CS") to repossess Plaintiff's vehicle. CS utilized an individual named Jeremie Kaufman[1] to accomplish the actual repossession.

On January 20, 2017, at 2:30 a.m., Kaufman knocked on Plaintiff's door. When Plaintiff answered the door, Kaufman requested his keys. Plaintiff refused to give Kaufman the keys. (Dkt. No. 29, Sogn Decl. at ¶ 3.) Kaufman retreated, but then returned a second time, again

---

[1] Kaufman is named as a defendant in this matter, but has never been served nor appeared.

requesting the keys and advising Plaintiff that a new law required the repossessor to inventory the possessions in the car (Defendants concede that this was a falsehood) and he was giving Plaintiff a chance to retrieve his items from the car. Plaintiff again refused and Kaufman left the front door and returned to his vehicle (both the tow truck and Plaintiff's Lexus were at the rear of the home).

Plaintiff alleges that (following the encounters at his front door) he saw Kaufman in his backyard and came out through the back door. Kaufman refused to identify himself and started yelling at Plaintiff, again requesting the keys to the car, which Plaintiff again refused to turn over. (Dkt. No. 29, Sogn Decl. at ¶ 5.) Kaufman told Plaintiff that if Plaintiff tried to enter his vehicle, he would use physical force to stop him. Kaufman then used a tool to unlock the door of the vehicle, which set off the car alarm. (Id. at ¶ 6.) Plaintiff alleges that, when Plaintiff retrieved his belongings from the car, Kaufman shouted to a second individual in the tow truck (Dustin Maryman, neither a party nor a witness) to call the police and let them know that Plaintiff was ex-military and armed (Plaintiff is a former member of the military, but alleges he was not carrying a weapon). Maryman responded that "Officer Johnson" was on his way. (No police arrived until Plaintiff himself called them later.) (Id. at ¶¶ 7-8.)

Plaintiff's vehicle was an all-wheel drive ("AWD") car and "was parked head-in in the back alley behind [his] home, tightly enclosed at the front end and both sides by fencing." (Id. at ¶4.) Because the car is AWD, it cannot be moved by just lifting the back-end. The car either has to be taken out of "park" or all four wheels have to be lifted completely off the ground by means of a dolly or flatbed. (Id.; Dkt. No. 30-2, Terri Cody Depo at 62:1-16, 67:7-17.) While Plaintiff provided no evidence as to how the car was towed away, he does declare that there were no drag marks in his dirt driveway. (Sogn Decl. at ¶ 4.)

Plaintiff called AUSA to complain about the repossession. The complaint was passed along to PAR, Inc., who in turn passed it along to CS. The deposition testimony of the co-owner of CS (Dan Cody; Dkt. No. 30, Trueblood Decl., Ex. 30-2) indicated that CS investigated the matter and found Plaintiff's version more credible than Kaufman's. (Id. at 39:21-40:25.) Kaufman was suspended and issued a document entitled "Breach of the Peace Violation, Consumer Finance Protection Violation" which described Kaufman's actions as a "violation of law and company policy." (Trueblood Decl., Ex. 30-6.)

## Motions to Strike

Both sides filed motions to strike evidence submitted by the opposition. The Court will turn to those first before addressing the substantive motions.

Plaintiff's Motion to Strike

*Late-disclosed witnesses*

Plaintiff objects to the failure disclose Athar Nazir (AUSA's 30(b)(6) witness) as AUSA's witness on the AUSA-CS relationship and to the late disclosure of Roger Varhas (an agent for AUSA who recorded – with permission – a phone conversation with Plaintiff during which he discussed the repossession events).

Nazir was not disclosed until the day of the 30(b)(6) deposition and it does not appear that Plaintiff objects to that, but AUSA has submitted (as part of their dispositive motion) a declaration from Nazir on the issue of AUSA's (lack of) control over CS and its employees. Plaintiff is correct – FRCP 26(a) requires a party to designate the name and address of "each individual" likely to have discoverable information. The penalty for such an oversight is spelled out in FRCP 37(c):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Defendant AUSA was obligated under the federal rules to disclose Nazir as a witness with discoverable information about the degree of control exercised by the credit union over PAR, Inc. and its subcontractors/independent contractors. Failure to so disclose subjects AUSA to the penalties of FRCP 37(c) – Defendant is not permitted to introduce Nazir's declaration as evidence.

Varhas was not mentioned in AUSA's initial disclosures, nor was he identified in response to Plaintiff's April 13, 2018 interrogatories requesting AUSA to identify "all persons with knowledge of the circumstances of the repossession of plaintiff's vehicle." (Trueblood Decl., Exs. 8-9.) But he was disclosed in supplemental responses filed by AUSA on June 19 (by last name only, with no indication of who he worked for or what his contact information was; Id., Ex. 10 at 3). It was not until June 26 -- three days before the close of discovery -- that AUSA produced the recording of the phone conversation between Plaintiff and Varhas. (Id., Ex. 11.) Plaintiff had requested "all written or recorded statements of any witness or the parties herein" in the April 13 document demand (Id., Ex. 14) and AUSA responded on May 14 that "all responsive documents have been produced through the course of discovery." While this is unquestionably *late*-disclosed evidence, it is within the discovery period and Plaintiff provides no authority that penalizes a party for producing evidence late in the discovery period.

However, AUSA attempts to introduce the evidence of the conversation between Varhas and Plaintiff with no authentication whatsoever. FRE 901 requires "a proponent [to] produce evidence sufficient to support a finding that the item [of evidence] is what the proponent claims it is," and enumerates specific requirements for evidence of a telephone conversation. AUSA

has ignored those requirements in its summary judgment motion, and Plaintiff's request to strike the evidence of the telephone conversation between Plaintiff and Varhas will be GRANTED.

Plaintiff also tries to characterize one of AUSA's attorneys – Karleen Scharer – as a witness. She is not held out as a percipient witness of any sort and her declaration attaching various evidentiary documents – and declaring them to be true and correct copies -- does not make her one.

*Defendants' evidentiary submissions*

<u>Varhas recording</u>: This evidence has been discussed (and stricken) *supra.*

<u>Exhibit 3 - AUSA's transactions log</u>: Plaintiff moves to strike this evidence, but AUSA cites to deposition testimony that the parties stipulated to its authenticity as a business record during the course of the 30(b)(6) deposition. (2nd Scharer Decl., Ex. 8, 114-115.) The request to strike will be DENIED.

<u>Exhibit's 1 and 2 - videos from Plaintiff's security camera</u>: Plaintiff objects to the introduction of this evidence on two grounds:

1. *FRE 901(a) (unauthenticated and no personal knowledge).* The videos were created by Plaintiff and as such qualify as admissions of a party opponent. (FRE 801(b).) Plaintiff does not dispute their veracity and, if need be, they can be further authenticated at trial.

2. *FRE 802 (hearsay).* As regards the statements of Plaintiff (which are nearly inaudible), they are admissible as statements of a party opponent. AUSA contends for the admissibility of the hearsay statements of Kaufman recorded on the video as statements made by an unavailable declarant. FRE 804(a)(5). But, other than an uncorroborated conclusory statement, Defendant's pleadings

contain no declarations or other evidence which would lay the foundation for such an exception.

However, it is apparent from reviewing the parties' pleadings that not all of Kaufman's statements heard on the video are being introduced for the truth of the matter asserted; some of them (e.g., Kaufman's untruthful statement about a "new law" requiring him to inventory Plaintiff's possessions in the car) are being offered solely for the fact that he said them. The parties make no effort to parse out which statements are being offered for what purpose, and the Court will not do that work for them. The motion to exclude the videos from evidence will be DENIED.

<u>Defendant AUSA's Motion to Strike/Plaintiff's Motion for Judicial Notice</u>

Plaintiff's responsive briefing makes much of Kaufman's criminal history, going so far as to request that judicial notice be taken of a series of misdemeanor convictions from 2002 – 2005. Defendant AUSA objects on a number of grounds.

1. *FRE 609(b)*: Under this rule, a criminal history greater than 10 years old is admissible only if (1) the probative value outweighs the prejudice and (2) the opposing party has been notified of the proponent's intent to introduce it. Defendants allege there was no notification by Plaintiff of his intention to introduce the material.

2. *FRE 403*: Defendants argue that the possible prejudice and confusion outweigh any probative value.

3. *FRE 404(b)(1)*: Pursuant to this rule, it is not permissible to introduce evidence of prior criminal activity as proof that a person acted in conformity with that behavior on this specific occasion.

The Court finds the objection is well-taken. The criminal history documents concerning Kaufman are public records which qualify for judicial notice, and the Court GRANTS Plaintiff's request for judicial notice. However, they are not admissible for purposes of this motion[2] on the grounds enumerated *supra*, and the Court will GRANT Defendant's request to strike this evidence and the argument based upon it.

## Motions for Summary Judgment

Standard of review

The legal standard governing the granting of summary judgments is well known. Summary judgment is appropriate where the non-moving party lacks competent evidence to establish a *prima facie* case. Ceotex v. Catrett, 477 U.S. 317, 322 (1986). The moving party meets its burden by showing that the non-moving party lacks the requisite evidence; once that showing is made, the burden shifts to the non-moving party to rebut the movant's proof. Id. at 325. Summary judgment is warranted where the non-moving party fails to demonstrate the existence of an element essential to the case on which that party bears the burden of proof. Id. at 322-23. The evidence is viewed in the light most favorable to the non-moving party.

Agency, vicarious liability, and nondelegable duty (AUSA)

AUSA argues that it cannot be held vicariously liable for the actions of CS or its employees on the grounds that CS was an independent contractor. AUSA cites case law enumerating the exceptions to its immunity from vicarious liability (inherently dangerous situations, situations where the duty of care is nondelegable, and situations where the contracted-

---

[2] The Court does not address at this time whether some or all of the evidence of Kaufman's criminal history might be admissible for impeachment purposes should he appear and testify.

for conduct is illegal), and asserts that none are applicable here. Hickle v. Whitney Farms, 107 Wn.App. 934, 940 (2001).

In the Court's view, the argument fails on at least two of the three grounds. First, car repossession is an inherently dangerous undertaking. Repossessing cars is an activity which by its nature (the retaking of a prized and important possession, often over the objections of the owner, usually at night and under circumstances which involve entry onto private property) has a potential for violence. The fact that by law a person attempting a repossession has to withdraw if the owner objects (and can only repossess if it can be done without a breach of the peace) is a recognition of the potential for dangerous, violent escalation if property is seized over the objections of the property owner.

Second, there is authority in the UCC for the proposition that the secured party is responsible for actions taken on behalf of the secured party, even by independent contractors; a "nondelegable duty of care." UCC § 9-609, Official Comments. In situations where the duty is created by statute, or there is inherent danger, the law permits no delegation of the duty of care to an independent contractor. Tauscher v. Puget Sound Power & Light Co., 96 Wn.2d 274, 277 (1981). AUSA attempts to distinguish Tauscher by arguing that it is restricted to liability to the employees of independent contractors, but that is not what the case says:

> The decisions of this court have recognized the liability of the employer of an independent contractor to *third persons* injured by the negligence of the contractor in the performance of work of an inherently dangerous nature.

Id. (citations omitted, emphasis supplied).

AUSA also contends that, because Washington law only permits reference to other sources where a statute is ambiguous (Cerrillo v. Esparza, 158 Wn.2d 194, 201 (2006), citation to the UCC commentary is inappropriate. However, Defendant fails to make any argument that

RCW § 62A.9A-609 is unambiguous (the statute is silent, for instance, on the subject of vicarious liability). Furthermore, the Washington statute is modeled after UCC § 9-609, and the Court finds it highly appropriate to refer to the UCC commentary for further elucidation of the statutory intent.

Additionally, there is a disputed issue of material fact concerning the existence of an agency relationship between AUSA, PAR, Inc., and CS. The contract between AUSA and PAR, Inc. states that PAR "shall act as Client's agent." (Dkt. No. 30, Trueblood Decl., Ex. 5, ¶ 8.) The contract also states that the term "PAR" "collectively refer(s) to itself and its network of repossession contractors, subcontractors and their respective subcontractors and agents" (Id., p. 1); i.e., including its subcontractor CS.

AUSA attempts to argue that its contract with PAR creates no agency relationship with any of PAR's contractors, pointing to language that states

> Under no circumstances shall PAR or PAR's employees or other persons performing work of PAR be considered [Alaska USA] employees, nor shall PAR represent or give the appearance of an agency authority beyond that granted in this agreement.

(Id., ¶ 8(a).) But that same provision states that

> *[e]xcept in strict performance of PAR's responsibilities expressly authorized by [Alaska USA] pursuant to this Agreement*, PAR is not the express, implied, or apparent agent of [Alaska USA] for any other purpose.

(Id.; emphasis supplied.) Car repossession is exactly within "the strict performance of PAR's responsibilities," and AUSA is not entitled to summary judgment on the issue of its vicarious liability for the behavior or PAR/CS's repossession agents. Its allegations that it exercised no control over CS are irrelevant – the whole point of a "nondelegable duty" is that it exists independent of any exercise of control.

RCW § 62A.9A-609/Breach of contract

Both the repossession statute[3] and Plaintiff's contract with AUSA[4] restrict the repossession of the vehicle to circumstances where it can be accomplished without a "breach of the peace." Plaintiff alleges that Defendants violated the statute and breached the contract by committing a breach of the peace in the act of repossession; Defendant contends that it is entitled to summary judgment because the undisputed facts establish that no breach of the peace occurred (or that any breach of the peace which did occur is non-actionable).

It is a highly unpersuasive position. Plaintiff's undisputed testimony is that Kaufman threatened him with physical violence and set off the car alarm at 2:30 a.m. while breaking into the car, either of which would suffice for a reasonable jury to find a breach of the peace. In the face of this evidence, Defendants are reduced to claiming that the "uncontroverted" evidence demonstrates that any breach of the peace which may have happened occurred *after* the car had been successfully repossessed, therefore is not actionable.

The argument fails for two reasons. First, Defendants cite no case authority that only a breach of the peace which occurs before the repossession is complete can form the basis for liability. The lack of case support is hardly surprising: such a rule would give repossession agents carte blanche to commit multiple kinds of mayhem once the property had been seized, a

---

[3] **(a) Possession; rendering equipment unusable; disposition on debtor's premises.** After default, a secured party:
**(1)** May take possession of the collateral; and
**(2)** Without removal, may render equipment unusable and dispose of collateral on a debtor's premises under RCW 62A.9A-610.
**(b) Judicial and nonjudicial process.** A secured party may proceed under subsection (a) of this section:
**(1)** Pursuant to judicial process; or
**(2)** Without judicial process, *if it proceeds without breach of the peace.*
Rev. Code Wash. § 62A.9A-609 (emphasis supplied).

[4] "You agree that the credit union can take possession of the collateral without judicial process and without giving you advance notice *provided it can do so without a breach of the peace.*" (Nazir Decl., Ex. A at 2; emphasis supplied.)

scenario which is rife with disastrous and dangerous possibilities, and clearly not in the public interest.

Second, the evidence does *not* establish that Kaufman had successfully repossessed the vehicle when all the various breaches of the peace occurred. As established by Plaintiff's evidence, his Lexus was an all-wheel drive vehicle, which meant it could only be towed if (1) it was taken out of "park" or (2) all four wheels were off the ground. Looking at the evidence in the light most favorable to the nonmoving party, the most logical explanation for Kaufman coming to the front door at 2:30 a.m. and requesting the car keys is that (1) the car was locked, hence (2) he was unable to take it out of "park" and (3) would therefore have had to get a dolly under all four wheels which (4) he could not do because of the confined space in which the car was parked.

Simple logic compels this conclusion – why would Kaufman come to Plaintiff's front door at 2:30 a.m. to get his car keys if he had already succeeded in hooking the car up? Clearly he needed the keys to complete the repossession, therefore anything that occurred between his first contact with Plaintiff and the time that he set the car alarm off by breaking into the vehicle occurred *before* the car was in Kaufman's possession.

In what can only be described as an act of desperation, AUSA attempts to re-write the piece of evidence which is possibly most prejudicial to its position: the letter issued by CS to Kaufman suspending him for breaching the peace. The company issued Kaufman a suspension letter which was entitled "Breach of the Peace Violation, Consumer Finance Protection Violation" and described Kaufman's actions as a "violation of law and company policy." (Trueblood Decl., Ex. 30-6.) AUSA introduces testimony from the co-owner of CS claiming that the company really *did not* conclude that there had been a breach of the peace and that labeling

the letter "Breach of the Peace Violation" was "a lapse in judgment." (Dkt. No. 39, Second Scharer Decl., Ex. 10, 85:6-8, 85:11-16.) The Court declines to entertain this rather transparent attempt to revise a fact prejudicial to Defendant's case by simply having a witness testify to the contrary; the letter speaks for itself.

Defendants are not entitled to summary judgment on Plaintiff's claims of violation of RCW § 62A.9A-609 and breach of contract based on Kaufman's breach of the peace.

Consumer Protection Act

Plaintiff makes an unsuccessful attempt to qualify a violation of RCW § 62A.9A-609 as a *per se* "unfair or deceptive act or practice" under the CPA. As Defendants point out, however, he bases that argument on a case (Sherwood v. Bellevue Dodge, 35 Wn.App. 741, 747 (1983)) which predates Hangman Ridge Training Stables v. Safeco Title Ins., 105 Wn.2d 778 (1986), the current standard for evaluating CPA claims. One of the departures from previous practice announced in Hangman Ridge was the Washington Supreme Court's determination that

> the Legislature, not this court, is the appropriate body to establish [an automatic CPA violation] by declaring a statutory violation to be a per se unfair trade practice. Where the Legislature specifically defines the exact relationship between a statute and the CPA, this court will acknowledge that relationship.

Id. at 787. Since the legislature has thus far not established such a relationship between RCW § 62A.9A-609 and the CPA, we cannot do so.

Which leads the Court to a determination of whether, as a matter of law, the undisputed facts fail to establish all the elements of a CPA claim: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) causing injury to the plaintiff in his business or property, (5) which injury is causally linked to the unfair or deceptive act. Id. at 784-85.

Whether a particular act or practice qualifies as "unfair or deceptive" is a question of law. Panag v. Farmer Ins. Co. of Washington, 106 Wn.2d 27, 47 (2009). The Court finds there is sufficient evidence to suggest that a reasonable jury could find that Kaufman's actions were both deceptive and unfair. There are numerous instances in which he was deceptive: according to the undisputed evidence, he lied about (1) having the car "on the truck" when he knocked on Plaintiff's door, (2) about the "new law" which required him to inventory the car's contents, and (3) about calling the police when Plaintiff confronted him in his backyard (and about notifying the police that Plaintiff was armed). In order to qualify as "deceptive," the misrepresentation must be "material" (Nguyen v. Doak Homes, Inc., 140 Wn.App. 726, 734 (2007) and "likely to mislead a reasonable consumer." (Panag, 166 Wn.2d at 50.) Kaufman's misrepresentations qualify on both counts.

A reasonable jury also could find, based on the undisputed facts, that Kaufman's conduct was "unfair" as well. In addition to the deceptions undertaken during the course of the repossession, there is also ample evidence that the peace was breached, a course of conduct which could be reasonably found to be "unfair."

The activity unquestionably took place "in trade or commerce." Defendants attempt to argue that the incident was a "private dispute" which has no "potential to affect the public interest" as the CPA requires. Indoor Billboard/Wash., Inc. v. Integra Telcom of Wash., Inc., 162 Wn.2d 59, 74 (2007); Hangman Ridge, 105 Wn.2d at 789-90. The Court disagrees – permitting this type of conduct in an inherently dangerous (and not at all uncommon) commercial enterprise has every potential to impact the public at large. The fact that the legislature has seen fit to permit this business activity only where it can be done without breaching the peace is a clear indication that it is considered to have a public impact.

1         Defendants have only challenged Plaintiff's assertion of damages as it relates to his claims of emotional distress, and the Court addresses that issue below. Aside from his emotional distress damages, whatever other damages Plaintiff claims (he asserts, in his declaration, costs associated with the loss of the use of his car, storage fees paid to CS, and repossession fees paid to AUSA) he has established as causally related to the acts of Defendants at issue here.

        Defendants' motion for summary judgment as regards the CPA claim will be denied..

Emotional distress damages

        Although Plaintiff did not include a claim for negligent infliction of emotional distress in his complaint he did, in a supplemental response to an interrogatory about his actual damages, include an allusion to damages for "emotional distress, in an amount to be determined by the jury." (Scharer Decl., Ex. 6, p. 1.) As Defendants point out, however, in Washington emotional damages (if not based on a claim of negligent or intentional infliction of emotional distress) can only be recovered for intentional torts. <u>Cagle v. Burns & Roe, Inc.</u>, 106 Wn.2d 911, 916 (1986).

        Plaintiff makes several unconvincing arguments that some of his causes of action include damages for emotional distress. Regarding the RCW 62A.9A-609 claim, he asserts that the "plain meaning" of the language of RCW 62A.9A.625(b) ("a person is liable for damages in the amount of any loss caused by a failure to comply with this Article") is that "emotional distress damages are available." (Response at 22.) He cites no authority for this proposition, and the Court does not find that "any loss" plainly means emotional damages – "losses" and "damages" are not necessarily the same thing. While Plaintiff points out that "[n]o judicial decision in the 50 states has ever interpreted the words 'any loss' to exclude emotional distress damages" (<u>Id.</u>),

he cites no case law from any state that the term has ever been found to *include* "emotional distress damages," either.[5]

Plaintiff attempts, with even less success, to contend that the CPA permits recovery for emotional damages, asserting that emotional damages are not recoverable under the CPA *only* when there there is no proof of loss to business or property. The case he cites for this proposition (Keyes v. Bollinger, 31 Wn.App. 286, 294-296 (1982)) does not support his argument. It is, at this point in CPA jurisprudence, incontrovertible that the statute permits recovery only for losses to business or property and that personal injuries (including emotional distress) are not recoverable as CPA damages. Washington State Physicians Ins. Exch. v. Fisons Corp., 122 Wn.2d 299, 318 (1993).

However, Plaintiff does cite case law upholding emotional damages under the FDCPA. McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 957 (9th Cir. 2011). The court in McCollough noted that "McCollough presented evidence of emotional distress through his own testimony and testimony from a clinical psychologist." (Id.) As Defendants point out, Plaintiff has provided evidence from neither treatment providers nor expert witnesses attesting to the nature and extent of any emotional damages he suffered. Nevertheless, he does present testimony through his uncontroverted declaration that "[t]he incident triggered traumatic memories of combat" (he is a veteran of tours in both Afghanistan and Iraq), that he still experiences sleeplessness and night sweats as a result of the encounter, and that he suffers additionally because of the worry his wife continues to experience. (Sogn Decl., ¶¶ 1, 10.)

---

[5] He again cites Sherwood, the pre-Hangman Ridge case, for the holding that "general principles of tort law" authorize recovery of emotional distress damages for wrongful repossessions. But in addition to being a pre-Hangman Ridge decision, the emotional damages claim in that action was for intentional infliction of emotional distress, a cause of action not plead by this plaintiff. 35 Wn.App. at 748-49. It is a fatal distinction.

Viewing the evidence in the light most favorable to the nonmovant, the Court will deny summary judgment on this portion of Plaintiff's pleadings and allow him the opportunity to establish a right to recover for emotional damages under the FDCPA claim alone.

**Conclusion**

For the most part, Defendants have failed to carry their burden of establishing that Plaintiff has insufficient facts to prove the claims he has brought against them. The Court finds that, with the exception of his cause of action for violation of the FDCPA, Plaintiff is not entitled (as a matter of law) to pursue emotional damages and that portion of Defendants' request for summary judgment will be granted.

As regards the remainder of Defendants' dispositive motion, however, summary judgment will be denied.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 19, 2018.

The Honorable Marsha J. Pechman
United States Senior District Court Judge